# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JEFFREY WILSON, personally and on behalf of the ESTATE OF MARGUERITE WILSON, deceased, and her survivors, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) No. 15-CV-11700<br>)<br>) Judge John J. Tharp, Jr. |
| v. | )<br>) |
| NOUVAG GmbH, a business organized in Germany; NOUVAG AG, a business organized in Switzerland; RICHARD WOLF MEDICAL INSTRUMENTS CORP., a Delaware Corporation; RICHARD WOLF GmbH, a business organized in Germany, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Jeffrey Wilson ("Wilson"), a Virginia resident, brings this products liability lawsuit on behalf of himself and the estate of his deceased wife, Marguerite Wilson ("Mrs. Wilson"), and her survivors. Mrs. Wilson died of cancer in 2013. Her husband alleges that a medical device used during a surgical procedure spread Mrs. Wilson's previously undiagnosed cancer and caused it to advance from a curable stage to a more serious stage with a low survival rate. Wilson claims that the device manufacturers, Nouvag AG and Nouvag GmbH, and distributors, Richard Wolf GmbH and Richard Wolf Medical Instruments Corporation, are liable for design defects, failure to warn, negligence, and breach of warranties. Defendant Nouvag AG moves to dismiss Wilson's second amended complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Because Wilson has failed to show that Nouvag AG had

sufficient contacts with the State of Illinois related to the clams in this lawsuit, the Court grants the motion to dismiss.

## BACKGROUND[1]

Wilson resides in York County, Virginia, and is the appointed personal representative of the estate of his deceased wife. Nouvag AG is a privately owned company based in Switzerland that designs and manufactures dental and medical equipment, including a product called the Morce Power Plus Morcellator ("the morcellator"). A morcellator is a medical device used to cut or core tissue into smaller pieces or fragments through a procedure called morcellation. Nouvag AG sells and delivers its morcellators to Richard Wolf GmbH ("Wolf GmbH"), a company based in Germany. Wolf GmbH has a subsidiary based in Vernon Hills, Illinois called Richard Wolf Medical Instruments Corp. ("Wolf USA"). Nouvag AG is the parent company of or direct or indirect owner of substantially all of the stock or other interests of Nouvag GmbH, a company based in Germany. All four defendants were registered with the United States Food and Drug Administration ("FDA").

In December 2012, Mrs. Wilson underwent a laparoscopic surgical procedure in Virginia to remove her uterus. During the procedure, her surgeon used a morcellator manufactured by Nouvag AG. When morcellation is used to remove a woman's uterus, it can result in spreading cancerous tissue within the abdominal cavity beyond the uterus. After her surgery, it was discovered that Mrs. Wilson had a form of cancer called leiomyosarcoma in her uterine tissue, which had been previously unknown and undiagnosed. The morcellator used during the hysterectomy spread or upstaged Mrs. Wilson's cancer. She underwent chemotherapy treatment and additional surgery, but died in December 2013, just a year after the hysterectomy.

---

[1] The background facts are taken from Wilson's SAC and Nouvag AG's declaration in support of its motion to dismiss. Conflicts are resolved as set forth *supra* at 4.

Wilson alleges that the defendants were aware of and ignored the risk that the morcellator would cause dissemination of undiagnosed cancerous tissue, and would upstage cancer from a survivable or curable stage to an advanced stage with a low rate of survival. He asserts that the morcellator was defective in design because the foreseeable risks of the product exceeded its benefits and that the defendants failed to adequately warn of the product's increased risk of dissemination of cancerous tissue. Wilson also alleges that the defendants failed to exercise adequate care in the design, formulation, manufacture, distribution, marketing, labeling, and sale of the morcellator. In addition, Wilson claims that the defendants breached express and implied warranties.

In December 2015, Wilson filed a complaint asserting his claims against the defendants for their roles in manufacturing, distributing, and selling the morcellator used in his wife's surgery. Nouvag AG filed a motion to dismiss the complaint for lack of personal jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6) and Wilson responded by filing a first amended complaint ("FAC"). Nouvag AG again moved to dismiss the FAC for lack of personal jurisdiction. Wilson later sought leave to file a second amended complaint, which the Court granted. Nouvag AG then filed a motion to dismiss Wilson's SAC for lack of personal jurisdiction.

## DISCUSSION

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Generally, the court accepts as true all well-pleaded facts alleged in the complaint and resolves any factual disputes in favor of the plaintiff. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). If, however, the defendant submits affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings

and submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Found.*, 338 F.3d at 782-83. Factual assertions that amount only to "vague generalizations or unsupported allegations," are insufficient to support personal jurisdiction. *Mohammed v. Uber Techs., Inc.*, 237 F. Supp. 3d 719, 733 (N.D. Ill. 2017). Facts contained in a defendant's affidavit that remain unrefuted by the plaintiff are accepted as true. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009); *Interlease Aviation Inv'r II v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1031 (N.D. Ill. 2003). When a district court considers a 12(b)(2) motion based on the submission of written materials, without an evidentiary hearing, the plaintiff "need only make out a prima facie case of personal jurisdiction." *Purdue Research Found.*, 338 F.3d at 782 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). An evidentiary hearing is required only where the parties' submissions reveal disputed fact issues the resolution of which is material to whether the plaintiff has made out a *prima facie* case for personal jurisdiction over the defendant. *Cent. States, Se. & Sw. Areas Pension Fund v. B&M Marine Constr., Inc.*, No. 16-CV-2743, 2018 WL 318483, at *3 (N.D. Ill. Jan. 8, 2018).

In a diversity case such as this, a federal district court may exercise personal jurisdiction over a defendant if the defendant is subject to the jurisdiction of a state court in the state where the district court is located. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). In Illinois, a state court may exercise jurisdiction under Illinois's "long-arm" statute to the full extent permitted by the United States Constitution. 735 ILL. COMP. STAT. 5/2-209(c). *See also N. Grain Mktg., LLC*, 743 F.3d at 492. Accordingly, this Court has personal jurisdiction over defendant Nouvag AG if jurisdiction is permissible under the United States Constitution. *See Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015).

The due process clause of the Fourteenth Amendment provides the constitutional limits to a state court's exercise of personal jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017). Due process permits a state court to exercise personal jurisdiction over a defendant if the defendant has "certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations and alterations omitted). To be subject to the jurisdiction of a state court, the defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A defendant's contacts with a State may give rise to general personal jurisdiction or specific personal jurisdiction. *Goodyear*, 564 U.S. at 919. General jurisdiction exists where a defendant has affiliations with the State that "are so continuous and systematic as to render [the defendant] essentially at home in the [State]." *Id.* Specific jurisdiction, however, requires "an affiliation between the forum and the underlying controversy" and the plaintiff's claims must "arise out of or relate to" the defendant's contacts with the State. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014); *Goodyear*, 564 U.S. at 919).

In its motion to dismiss, Nouvag AG argues that neither general nor specific personal jurisdiction exists in Illinois. In response, Wilson only argues that the court has specific jurisdiction over Nouvag AG. The Court, therefore, limits its analysis to whether it may exercise specific jurisdiction over Nouvag AG in this case.

## I. Specific Personal Jurisdiction

To establish specific personal jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). The connection must arise out of contacts that the defendant *himself* created with the forum State *itself*. *Id.* at 1122. The contacts of a third-party or of a plaintiff with the forum State, standing alone, will not suffice. *Id.* In addition, the defendant's contacts with the State must relate to the litigation. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) ("The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation.") (citing *Walden*, 134 S. Ct. at 1121). An affiliation between the forum State and the underlying claims, such as an activity or an occurrence that takes place in the forum State, must exist. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (citing *Goodyear*, 564 U.S. at 919). If no such connection exists, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

The crux of Wilson's argument is that Switzerland-based Nouvag AG has a substantial connection to Illinois because its morcellator was distributed in the United States by Wolf USA, which is based in Illinois. Wilson claims that Nouvag AG knew its product would be sold and distributed by Wolf USA "through Illinois."[2] As explained in more detail below, Wilson's argument fails because he has not established that Nouvag AG itself had any direct contact with the State of Illinois, nor has he shown that *any* conduct related to this lawsuit occurred in the State of Illinois.

---

[2] Wilson concedes that his additional argument "that Nouvag's sales to consumers in Illinois and its knowledge that its products would be sold in Illinois can support specific jurisdiction," Resp. to Def.'s Suppl. Authority 2, ECF No. 68, does not survive the Supreme Court's ruling in *Bristol-Myers Squibb Co.,* 137 S. Ct. 1773.

### A. Connection with Illinois

In its motion opposing jurisdiction, Nouvag AG argues that it has no contacts with the State of Illinois and provides a sworn declaration by its CEO, Heinz Wieser, to establish this fact. According to the declaration, which is uncontroverted, Nouvag AG is not registered or licensed to do business in Illinois, it does not itself do business in Illinois, and it does not have a registered agent in Illinois. The Swiss company does not maintain any offices, employees, or a phone listing in this State, it does not lease or own any property here, and it has no bank accounts or other assets or direct investments in Illinois. Nouvag AG does not advertise directly in this State and it has not entered into or performed under any contracts in or relating to Illinois. Furthermore, Weiser's declaration states that Nouvag AG does not sell the morcellator directly to Illinois-based defendant Wolf USA. Rather, Nouvag AG manufactures and sells the morcellator to defendant Wolf GmbH, under an original equipment manufacturer agreement, and delivers the product exclusively to Wolf GmbH's premises in Germany. Nouvag AG has no knowledge or influence over what happens to the product after it is sold and delivered to Wolf GmbH, and it does not track sales of the morcellator once it is sold to Wolf GmbH. Nouvag AG has no way to determine how many, if any, of the morcellators are sold in Illinois, and it does not target sales of the morcellator or any other product at the state of Illinois.

Wilson, however, argues that the connection between Nouvag AG and Illinois-based Wolf USA is sufficient to establish personal jurisdiction over the Swiss manufacturer in this State. Wilson argues that Nouvag AG intentionally directed distribution of its morcellator into the United States through an Illinois company (Wolf USA) and knew its product "would be sold and distributed through Illinois to customers in the U.S." Pl.'s Resp. to Mot. to Dismiss SAC 1, 8, ECF No. 56. The SAC alleges that Nouvag AG was aware that by entering into a distribution

agreement with Wolf GmbH, it was "directing and targeting [its] marketing activities in the United States through the state of Illinois." SAC ¶ 35, ECF No. 51. Wilson also argues that when Nouvag AG sought FDA clearance to sell the morcellator in the U.S., "it did so intending that all sales would be directed through Illinois." Pl.'s Resp. to Mot. to Dismiss SAC 1, ECF No. 56. Wilson points to excerpts from Nouvag AG's submissions to the FDA, which, according to Wilson, "identify the U.S. distributor (Wolf USA in Vernon Hills, Illinois), indicating that targeting the U.S. sales of the product through Illinois was always Nouvag AG's intent." *Id.* at 7.

Before addressing the merits of Wilson's argument, it is important to point out that Nouvag AG's declaration contradicts Wilson's allegation that it knew the morcellators would be sold and distributed through Illinois. The declaration states that Nouvag AG does not sell or deliver any morcellators directly to Illinois-based Wolf USA and Nouvag AG "has no knowledge or influence over of [sic] what happens to the product after it is sold and delivered to Richard Wolf GmbH." Def.'s Mot. to Dismiss SAC, Ex. A ¶ 19, ECF No. 53. Wilson contests this fact by arguing that Nouvag AG's FDA submissions demonstrate the manufacturer's "knowledge and intention that all [morcellator] units sold in the U.S. would enter the U.S. for distribution through Illinois." Pl.'s Resp. to Mot. to Dismiss SAC 7, ECF No. 56. The Court finds, however, that the FDA submissions do not put in dispute the facts in Nouvag AG's sworn declaration. The submissions that Wilson refers to include what appears to be excerpts of the morcellator's operating manual, which contains a page listing all the locations of various Wolf GmbH entities, including Wolf USA in Illinois. *Id.* at Ex. 4 at 19. It does not, however, provide any information about the distribution of the morcellator in the United States. At most, the inclusion of Wolf USA's location in the operating manual indicates that Nouvag AG was aware

that Wolf GmbH's subsidiary, Wolf USA, was located in Illinois.[3] But that fact alone does not provide any basis to determine that all morcellators sold in the United States would enter into the United States and be distributed through Illinois.[4] The Court, therefore, accepts as unrefuted Nouvag AG's statement that it did not sell or deliver any morcellators directly to Wolf USA and it has no knowledge or control over what happens to the morcellators after they are sold and delivered to Wolf GmbH in Germany.[5]

Wilson's theory of personal jurisdiction fails for several reasons. First, Wilson has not established that Nouvag AG itself had any contacts with the State of Illinois, as is required to establish specific jurisdiction. The contacts of Nouvag AG's Germany-based customer, Wolf

---

[3] The Court also concludes that the FDA submissions, standing alone, do not provide a basis for jurisdiction in Illinois. An application for approval by the FDA is a contact with the United States in general, not specifically with the State of Illinois. *See Sarver v. Johnson & Johnson*, No. 2:14-cv-19968, 2016 WL 482994, at *5 (S.D.W. Va. Feb. 5, 2016). While the FDA submissions here unquestionably demonstrate Nouvag AG's intent to have its morcellator reach the United States market, they do not demonstrate any intent to target Illinois specifically. *See In re Testosterone Replacement Therapy ("TRT") Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 136 F. Supp. 3d 968, 974-75 (N.D. Ill. Sept. 30, 2015) (holding that seeking FDA approval for entry into a nationally regulated market is equally consistent with targeting only one state and targeting all states); *Tile Unlimited, Inc. v. Blanke Corp.*, 47 F. Supp. 3d 750, 761 (N.D. Ill. 2014) (the fact that a foreign manufacturer's products complied with United States regulations does not demonstrate "a deliberate attempt to serve the Illinois market").

[4] Furthermore, the SAC does not actually allege that this is how distribution in the United States occurred. The SAC only alleges that the morcellator was distributed, promoted, and marketed in the United States through Wolf USA, an Illinois-based subsidiary of Wolf GmbH. Wilson's response to the motion to dismiss does not provide any facts or evidence to support his claim that all morcellators entered into the United States through Illinois and were distributed or sold through Illinois.

[5] Wilson also argues that the declaration is contradicted by Wolf USA's answer because Nouvag AG states in its declaration that "Wolf GmbH is ultimately responsible for product labeling and end-user warnings," and in its answer, Wolf USA admitted to the allegation that "Nouvag is responsible for the content of the user manual and instructions for use of the [morcellator]." Pl.'s Resp. to Mot. to Dismiss SAC 6, ECF No. 56. But these two statements address different responsibilities and Wilson does not explain how the statements are contradictory. Wolf USA's admission does not directly contradict Nouvag AG's declaration and therefore does not present a factual dispute that should be resolved in the plaintiff's favor.

9

GmbH, with its Illinois-based subsidiary, Wolf USA, do not provide a basis for Nouvag AG's connection to Illinois. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 134 S. Ct. at 1122 (collecting cases). Therefore, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123. Furthermore, the minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122. The fact that Nouvag AG's customer distributed its product through a subsidiary based in Illinois is not enough to indicate that Nouvag AG purposefully availed itself of the privilege of conducting activities within Illinois.

Wilson invokes the "stream of commerce" theory of personal jurisdiction in an effort to establish Nouvag AG's contacts with Illinois. The "stream of commerce" is a metaphor for the concept of purposeful availment. It posits that a manufacturer's placement of goods in the stream of commerce with the expectation that they will ultimately be purchased by consumers within the forum state constitutes purposeful availment of the right to do business in the state and therefore provides the courts of that state with personal jurisdiction over the manufacturer. As the Supreme Court's most recent examination of the theory explains, various justices have offered competing views of what the theory requires to constitute purposeful availment. In *Asahi Metal Industry Company, Ltd. v. Superior Court of California, Solano County*, Justice Brennan, joined by three other Justices, staked out the broadest interpretation of the theory, agreeing that a defendant's "awareness that the final product is being marketed in the forum State" is sufficient to demonstrate purposeful availment. 480 U.S. 102, 117 (1987). Four other Justices, however, found that purposeful availment requires "additional conduct" indicating an "intent or purpose to

serve the market in the forum State." *Id.* at 112. More than 20 years later, the Court again addressed the stream of commerce theory in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), but again failed to reach a consensus on the proper test for purposeful availment. Justice Kennedy, in a plurality opinion, wrote "it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* at 882. Instead, a defendant's "transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum." *Id.* In his concurring opinion, Justice Breyer declined to endorse either Justice Kennedy's standard or that of Justice Brennan in *Asahi*, but found that the foreign manufacturer in the case did not demonstrate purposeful availment because there was no evidence of a regular flow or regular course of sales in the forum State and no additional conduct to indicate an effort to sell the product in the forum State. *Id.* at 889. Justice Ginsburg, joined by two other Justices, disagreed with the plurality and the concurring opinions and endorsed Justice Brennan's more expansive view of the theory. *Id.* at 893-910. All this leaves the "stream of commerce" concept of questionable significance in resolving questions of personal jurisdiction. Whatever the ultimate resolution of this debate may be, however, it is clear, as Justice Kennedy explained in *Nicastro*, that a majority of the Court has never held that jurisdiction premised on the placement of a product into the stream of commerce is, without more, sufficient to establish a constitutionally adequate connection to the forum State. *Id.* at 882.

Wilson posits that there is something more, namely its contractual arrangement with the Wolf defendants. By contracting with Wolf GmbH, he maintains, "Nouvag AG took specific steps to ensure its device would reach U.S. states, including Virginia, through Illinois, and specifically through" Wolf USA. Pl.'s Resp. to Mot. to Dismiss SAC 5, ECF No. 56. And to be sure, courts in this district have ruled that, in certain circumstances, personal jurisdiction exists

over a foreign manufacturer (or related entity) that used a third-party distributor to sell its products in the United States. *See, e.g.*, *In re TRT Prods. Liab. Litig.*, No. 14 C 1748, 2016 WL 5890022, at *1 (N.D. Ill. Oct. 10, 2016); *Chamberlain Grp., Inc. v. Techtronic Indus. Co., Ltd.*, No. 16 C 6097, 2017 WL 3394741, at *5 (N.D. Ill. Aug. 8, 2017). In *In re TRT Products Liability Litigation*, the court applied the more lenient standard for establishing personal jurisdiction under a stream of commerce theory. Relying on Seventh Circuit precedent and Justice Breyer's concurring opinion in *Nicastro*, the district court held that "a foreign manufacturer, who places its product into the stream of commerce in the United States, may be subject to jurisdiction in a state where that product causes an injury and where there is a regular flow of its product or a regular course of sales in that state." *In re TRT Prods. Liab. Litig.*, 2016 WL 5890022, at *3. *See also Chamberlain Grp., Inc.*, 2017 WL 3394741, at *4 (noting that Seventh Circuit precedent permits this standard). Other courts in this district, however, have applied the more demanding standard set forth in Justice Kennedy's plurality opinion in *Nicastro* holding that a plaintiff must show that the defendant purposefully directed its activities at the specific forum state.[6] *See, e.g.*, *Walker v. Macy's Merchandising Grp., Inc.*, No. 14 C 2513, 2016 WL 6089736, at *4-5 (N.D. Ill. Oct. 12, 2016); *Lorusso v. Menard*, No. 15-cv-7208, 2016 WL 704839, at *1-2 (N.D. Ill. Feb. 23, 2016).

Here, Wilson cannot meet even the more relaxed standard for establishing jurisdiction under a stream of commerce theory. As discussed above, Nouvag AG has no contractual arrangement with Wolf USA and there is no evidence that any of its products actually passed through Illinois on their way to Virginia or anywhere else. Wilson does not allege that Nouvag

---

[6] The parties in this case also cite to Justice Kennedy's opinion in *Nicastro*. Because Wilson cannot meet the more lenient standard endorsed by the concurring opinion in *Nicastro*, the Court will not analyze which opinion must be adhered to here.

AG's morcellator caused an injury in the forum state, nor does he allege that there was a regular flow of morcellators or a regular course of morcellator sales in Illinois. In fact, there is no allegation in the SAC that any morcellators were marketed or sold in Illinois. Other facts that supported jurisdiction in *In re TRT Products Liability Litigation* and *Chamberlain Group* are missing here as well. In *In re TRT Products Liability Litigation*, the defendant drug manufacturer received more than $600 million in royalty payments from U.S. sales and its employees received periodic updates about the United States market and sales of its drug. 2016 WL 5890022 at *3. Those substantial figures prompted the court to conclude that the defendant knew a regular and significant flow of its drug would end up in each of the forum states. *Id.* Similarly, in *Chamberlain Group, Inc.*, the court ruled that personal jurisdiction over a foreign defendant existed because the company had at least some control over the product's delivery into the stream of commerce, which inevitably deposited the product into Illinois, and the defendant had knowledge of the product's regular flow into the State. 2017 WL 3394741, at *5. Nouvag AG, by contrast, does not track Wolf GmbH's sales of morcellators, so has no knowledge about how many, if any, are sold in the State of Illinois. Furthermore, Nouvag AG does not target any sales of the morcellator to the State of Illinois and it has no knowledge or influence over what happens to the morcellators or where they are sold after it delivers them to Wolf GmbH.[7] And Wilson has

---

[7] Cases cited by Wilson in his response to the motion to dismiss are similarly distinguishable. In *Original Creations, Incorporated v. Ready America, Incorporated*, the district court found that the defendant "purposefully directed its activities at residents of Illinois" because it sold its products to distributors that marketed to Illinois residents. 836 F. Supp. 2d 711, 717-18 (N.D. Ill. 2011). Because the defendant took advantage of a clearly defined distribution network within Illinois and knew that Illinois was the likely destination of its products, the court ruled that jurisdiction in Illinois existed. *Id.* Similarly, in *In re Chinese Manufactured Drywall Products Liability Litigation*, the court held that the defendant purposefully directed its activities at the forum State because the defendant knew its product would be shipped to and used in the forum State. 894 F. Supp. 2d 819, 854-55 (E.D. La. 2012). The district court in *Gourdine v. Karl Storz Endoscopy-America, Incorporated* found that a

not alleged any facts similar to the facts that demonstrated purposeful availment in the cases he cites. Wilson does not allege that Nouvag AG—or any other defendants for that matter— attempted to sell, market, or distribute the morcellators within Illinois. Nor is there any allegation that any Nouvag AG morcellators were purchased and used in Illinois.

Wilson argues as well that personal jurisdiction can also be established based on an alleged agency relationship between Nouvag AG and Wolf USA. It is true that under Illinois law, "an agent's contacts with a state may be attributed to the principal for purposes of establishing personal jurisdiction." *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 821 (N.D. Ill. 2008). But Wilson makes only conclusory allegations that Wolf USA is an agent of Nouvag AG. To plead the existence of an agency relationship, a plaintiff must allege *some* facts that support the inference of agency. *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 895 (N.D. Ill. 2009). Furthermore, unsupported allegations by a plaintiff are insufficient to support personal jurisdiction. *Mohammed*, 237 F. Supp. 3d at 733. The SAC alleges that all four of the defendants were agents of each other, but it does not plead any facts to support that Wolf USA was an agent for Nouvag AG. Wilson argues that the manufacturer's submissions to the FDA indicate an agency relationship based on apparent authority because Nouvag AG designated Wolf USA as its "Illinois agent for communications with U.S. purchasers and users." Pl.'s Resp. to Mot. to Dismiss SAC 10-11, ECF No. 56. But this argument simply is not plausible. The test for agency is "whether the alleged principal has the right to control the agent, and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998). Even

---

foreign morcellator manufacturer purposefully availed itself of the forum State's laws because the manufacturer's wholly-owned distributor sent a sales representative to the forum state to solicit morcellator customers with marketing materials authored by the manufacturer. 223 F. Supp. 3d 475, 489 (D.S.C. 2016).

under a theory of agency based on apparent authority, the principal must create the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf. *ABN AMRO, Inc.*, 595 F. Supp. 2d at 822. The FDA submissions contain excerpts from the morcellator's operating manual, which includes a page listing the locations of various Wolf entities around the world, including Wolf USA in Illinois. It in no way creates an impression that Nouvag AG controls Wolf USA, or that Wolf USA can act on behalf of Nouvag AG. Furthermore, Wilson's argument is contradicted by Nouvag AG's declaration, which states that Nouvag AG has no knowledge or influence over what happens to the morcellators after they are sold and delivered to Wolf GmbH. This fact demonstrates a lack of control by Nouvag AG over Wolf USA. The Court cannot exercise personal jurisdiction over Nouvag AG based on Wilson's unsupported theory that it has an Illinois-based agent.

## B. Relation to Litigation

Even if Wilson had adequately established that Nouvag AG has contacts with the state of Illinois, his argument for exercising personal jurisdiction over Nouvag AG in Illinois would still fail because Wilson has not established that Nouvag AG's alleged connection with the State of Illinois has any relation to the claims in this lawsuit. In fact, Wilson does not allege that ***any*** specific conduct related to his claims took place in Illinois. Specific jurisdiction exists only if there is "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (citing *Goodyear*, 564 U.S. at 919) (internal quotations and alterations omitted). The defendant's "***suit-related*** conduct" must create its connection to the forum. *Walden*, 134 S. Ct. at 1121 (emphasis added). Activities in the State that are unrelated to the claims are irrelevant to establishing specific jurisdiction. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781.

The recent ruling by the Supreme Court in *Bristol-Myers Squibb* regarding the "suit-related" requirement for specific jurisdiction is particularly relevant to this aspect of the dispute at hand.[8] In *Bristol-Myers Squibb*, the Supreme Court ruled that a California court could not exercise specific jurisdiction over an out-of-state drug manufacturer for product liability claims that had no connection to the state of California. 137 S. Ct. at 1782. The plaintiffs asserting the claims did not live in California, were not prescribed the defendant's drug in California, and did not purchase, ingest, or suffer harm from the drug in California. *Id.* at 1781-82. In addition, the defendant manufacturer did not develop, manufacture, label, package, or work on the regulatory approval of the drug in California. *Id.* at 1778. The Court ruled that "all the conduct giving rise to" the nonresident plaintiffs' claims occurred outside of California, and therefore, California courts could not exercise specific jurisdiction over an out-of-state defendant. *Id.* at 1782. Significantly, the Court also addressed and rejected an argument by the nonresident plaintiffs that the defendant manufacturer's decision to contract with a California company to distribute the drug nationally provided a sufficient basis for personal jurisdiction. *Id.* at 1783. The Court ruled that a defendant's contract with a distributor in the forum State is not itself enough to establish personal jurisdiction in the State. *Id.* It noted that there was no allegation that the defendant engaged in relevant acts together with the distributor in California, or that the defendant was derivatively liable for the distributor's conduct. *Id.* Furthermore, the nonresident plaintiffs provided no evidence to show how or by whom the drugs they took were distributed to the pharmacies that dispensed the drugs to them. *Id.*

---

[8] After the Supreme Court issued its opinion in *Bristol-Myers Squibb,* Nouvag AG requested leave to submit the case as supplemental authority in support of its motion to dismiss. The Court granted the motion and permitted Wilson to file a response.

Like the nonresident plaintiffs' claims in *Bristol-Myers Squibb*, Wilson's claims against the Swiss defendant Nouvag AG for design defect, failure to warn, negligence, and breach of warranties, lack any connection to Illinois. Nouvag AG did not design, manufacture, label, or sell its morcellators in Illinois, *see* Def.'s Mot. to Dismiss SAC, Ex. A at ¶¶ 7-19, ECF No. 53, and Mrs. Wilson was not injured in this State. Notably, the SAC does not allege that the morcellator that injured Mrs. Wilson was purchased in Illinois. The SAC only alleges that the distributor for the morcellator, Wolf USA, is based in Illinois. That fact alone, which may be sufficient to establish general personal jurisdiction over Wolf USA in this State, does not establish that any conduct related to Wilson's claims actually occurred in Illinois, which is required to establish specific jurisdiction over a foreign defendant in this State. Wilson argues in his response to the motion to dismiss that all of Nouvag AG's morcellators entered into the United States "through Illinois" and were sold and distributed "through Illinois," but (as discussed above) it provides no facts or evidence to support these claims, which are not even alleged in the operative complaint. *See* Pl.'s Resp. to Mot. to Dismiss SAC 7, ECF No. 56 ("The 510(k) submission also demonstrates Nouvag AG's knowledge and intention that all [morcellator] units sold in the U.S. would enter the U.S. for distribution through Illinois."); *Id.* at 8 (Nouvag AG "knew that its morcellators, including the morcellator used in Mrs. Wilson's surgery, would be sold and distributed through Illinois to customers in the U.S."). Unsupported conclusory assertions, such as Wilson's claim that all of Nouvag AG's morcellators were sold and distributed through Illinois, cannot support the exercise of personal jurisdiction.

Wilson fails to establish that any suit-related conduct, by Nouvag AG or other defendants, took place in the State of Illinois. His theory of specific jurisdiction is based on even less than "the bare fact" that a defendant contracted with a distributor in the forum state, which

the Supreme Court held was insufficient in *Bristol-Myers Squibb* to establish specific jurisdiction. Here, Nouvag AG did not enter into a distribution contract with Illinois-based Wolf USA. Def.'s Mot. for Leave to File Instanter Suppl. Authority ¶ 8, ECF No. 65 (citing Def.'s Mot. to Dismiss SAC, Ex. A at ¶¶ 10-18). Nouvag AG manufactured morcellators under an agreement with Wolf GmbH in Germany and sold and delivered the morcellators exclusively to Wolf GmbH. Furthermore, similar to the plaintiffs in *Bristol-Myers Squibb*, Wilson has not established that Nouvag AG acted together with Wolf USA or is derivatively liable for Wolf USA's conduct. *See supra* at 14-15. Wilson also has failed to present any evidence showing how the morcellator that injured Mrs. Wilson was distributed to her surgeon.

Under the Supreme Court's ruling in *Bristol-Myers Squibb*, this Court cannot exercise specific jurisdiction over a foreign defendant for claims that have no connection to Illinois. 137 S. Ct. at 1782. *See also Livingston v. Hoffmann-La Roche Inc.*, No. 17 C 7650, 2018 WL 1183762, at *4-5 (N.D. Ill. Mar. 7, 2018) (granting motion to dismiss for lack of personal jurisdiction because all of the foreign defendants' alleged conduct giving rise to plaintiff's strict product liability and negligence claims occurred outside of Illinois); *In re TRT Prods. Liab. Litig.*, 164 F. Supp. 3d 1040, 1046-47 (N.D. Ill. 2016) (holding that personal jurisdiction over plaintiff's claims against defendant drug manufacturer did not exist where the claim was unrelated to the defendants' activities within the forum state). Wilson has not shown any "affiliation between the forum and the underlying controversy" to allow the exercise of specific jurisdiction in Illinois over Nouvag AG. *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (quoting *Goodyear*, 564 U.S. at 919).

## II. Jurisdictional Discovery

Wilson argues that if this Court does not find a basis to exercise personal jurisdiction over Nouvag AG, Wilson should be permitted to take jurisdictional discovery. As part of its request, Wilson proposes serving interrogatories, requesting documents, and conducting depositions on 17 wide-ranging topics.

A district court may allow a plaintiff to conduct limited discovery to establish that jurisdiction exists. *Indag GmbH & Co. v. IMA S.P.A.*, 150 F. Supp. 3d 946, 971 (N.D. Ill. 2015). The plaintiff, however, does not have an automatic right to jurisdictional discovery and must establish "a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). Jurisdictional discovery will be denied if it is based only upon unsupported assertions of personal jurisdiction. *Id.* "Foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *GCIU-Empl'r Ret. Fund*, 565 F.3d at 1026 (7th Cir. 2009).

Here, Wilson is not entitled to jurisdictional discovery because he has not made a prima facie showing of personal jurisdiction. He has not established that Nouvag AG itself had any contact with the State of Illinois. He has not shown that any suit-related conduct occurred in Illinois. Furthermore, Nouvag AG has submitted a sworn declaration establishing that it did not engage in the types of conduct that typically provide a basis for personal jurisdiction over a foreign manufacturer, and Wilson has failed to adequately dispute any of the facts asserted in Nouvag AG's declaration. *See supra* Section I(A). In support of his request for discovery, Wilson asserts that he has only limited information about Nouvag AG's operations. This fact,

however, in absence of a prima facie showing of personal jurisdiction, does not entitle Wilson to jurisdictional discovery from a foreign defendant.

The effect of this ruling, however, is limited. This ruling does not foreclose efforts to obtain non-party discovery from Nouvag AG or efforts to obtain discovery from other sources concerning the jurisdictional issues addressed in this motion. Nor does this ruling preclude a motion by Wilson, if timely asserted and supported by adequate evidentiary submission, to join Nouvag AG as a party. Effectively, then, Wilson may pursue the discovery he seeks, but not from Nouvag AG as a party and this case will move forward in the meantime.

\* \* \*

For the reasons stated above, the Court grants defendant Nouvag AG's motion to dismiss for lack of personal jurisdiction. Nouvag AG is dismissed from this case. A status hearing in this case is set for April 19, 2018 at 9:00 a.m.

Date: March 30, 2018

John J. Tharp, Jr.
United States District Judge